**Eve FERGUSON, Plaintiff,**

v.

**Lawrence M. SMALL, Secretary of the Smithsonian Institution, Defendant.**

**No. Civ.A. 99–2021 EGS.**

United States District Court, District of Columbia.

Sept. 26, 2002.

Leizer Z. Goldsmith, Goldsmith Law Firm, Washington, DC, for plaintiff.

Mark E. Nagle, William Mark Nebeker, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Eve Ferguson is suing the Secretary of the Smithsonian Institution, claiming that her termination during her probationary period of employment was the result of retaliation for a letter written by her attorney to the Institution's General Counsel. In the letter, plaintiff's attorney argued that she was entitled to reassignment as a reasonable accommodation, and requested that the Institution withdraw a request for medical information. A few days after plaintiff's supervisors received copies of this letter, plaintiff's employment was terminated. The stated reason for plaintiff's termination was "poor attendance." Plaintiff asserts that this retaliatory termination constituted a violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

Pending before the Court is defendant's renewed motion to dismiss or, in the alternative, for summary judgment. The Court has carefully considered the defendant's motion, the response and reply thereto, and the entire record herein. Drawing all reasonable inferences in favor of plaintiff, the Court finds that a reasonable jury could find that defendant unlawfully retali-

ated against her. Plaintiff has presented evidence demonstrating that genuinely disputed material facts preclude entry of summary judgment in this case. Accordingly, the Court denies defendant's motion for summary judgment.

## I. Factual Background

While the Court ultimately finds that significant factual disputes exist that preclude the entry of summary judgment, many of the underlying facts of this matter are not disputed. The progression of events leading to plaintiff's termination is, for the most part, clear from the parties' statements of fact, responses to requests for admissions and submitted deposition testimony.

Eve Ferguson was employed by the Anacostia Museum, a unit of the Smithsonian Institute, as a public affairs specialist. Response to Pl.'s Request for Admission No. 1 ("RPRA 1"). Plaintiff's supervisor was Louis Hicks, the Public Programs Coordinator for the Anacostia Museum. *Id.* 3, 4. Ms. Sharon Reinckens was the Museum's Deputy Director, and Steven Newsome was the Museum Director. *Id.* 3, 5.

From October 4, 1994 to November 21, 1994, Ms. Ferguson used 8 hours of medical leave, 4 hours of annual leave, 11.25 hours of leave without pay ("LWOP"), and 8 hours compensatory time. Def.'s Stmt. of Facts ¶ 3. From Ms. Ferguson's start date of October 4, 1994 through November 21, 1994, Ms. Ferguson arrived late to work on at least 20 separate days. *Id.* ¶ 4.

On November 21, 1994, plaintiff was injured in an on-the-job automobile accident in which plaintiff was a passenger. RPRA 6. Ms. Ferguson was hospitalized for six days, and sustained a liver contusion. *Id.* Following the accident, Ms. Ferguson was on leave for more than six weeks, from November 21, 1994 through January 7,

1995. Def.'s Stmt. of Facts ¶ 6. Plaintiff received compensation for that entire period. *Id.* When she returned to work, she provided a document dated January 6, 1995 signed by Dr. Cynthia Dragula of George Washington University Hospital, which stated that Ms. Ferguson was able to return to work. *Id.* ¶ 7. This letter did not list any work restrictions. *Id.*

In April 1995, Ms. Ferguson requested that she be permitted to arrive at work 15 minutes later than general work hours because of her bus schedule. *Id.* ¶ 8. This request was granted. *Id.* At some point, Ms. Reinckens offered to reduce Ms. Ferguson's work week to 35 hours. *Id.* ¶ 10, 11. However, Ms. Ferguson testified that she discussed this offer with her doctor, who recommended that she take medical leave instead. *Id.* ¶ 11.

On or about May 12, 1995, Ms. Ferguson was placed on leave restriction. *Id.* ¶ 14. According to the leave restriction letter, the reason for the leave restriction was that, despite the later arrival time granted her on April 3, 1995, Ms. Ferguson continued to arrive late and to use unscheduled leave to cover her late arrivals. The May 12, 1995 memorandum further stated:

> If you do not properly request and gain approval of leave, you may be charged AWOL, for which you may be disciplined or removed from employment because of failure to follow leave procedures even if the leave is otherwise appropriate and approved.

*Id.* ¶ 15. On the same day, Ms. Ferguson also received a memorandum confirming counseling about taking excessively long lunch breaks. *Id.* ¶ 16.

Ms. Ferguson's leave restriction was initially due to expire on July 12, 1995. However, sometime around June 29, 1995, Mr. Hicks informed plaintiff that, on account of her anticipated leave during the

month of July, the leave restriction letter would expire on August 17, 1995.

A letter from Drs. Cosgrove and Borenstein recommended that Ms. Ferguson be transferred to a job or division where she would not have to carry out certain types of activities. *Id.* ¶ 17. This recommendation was based upon a diagnosis of neck strain and elbow pain. *Id.* Ms. Ferguson began to discuss the contents of this letter with people at the Smithsonian in late June of 1995. *Id.* However, the Smithsonian determined that it was unable to offer Ms. Ferguson such a reassignment because no vacancies for positions that would meet the requirements of the letter and for which Ms. Ferguson was qualified.

In June 1995, Ms. Royal informed plaintiff that the Smithsonian would attempt to accommodate plaintiff as much as possible. *Id.* ¶ 20. However, if accommodation was unavailable, management might take steps to terminate plaintiff's employment if she was unable to perform the duties of her job. *Id.*

On June 27, 1995, plaintiffs submitted a leave request memo to Mr. Hicks covering the month of July and a doctor's note from her internist, as well as a May letter from a rheumatologist. ROI[1] 33, Mem. from Ferguson to Hicks, 6/7/95. This request was accompanied by a letter dated June 22, 1995 from Dr. Jones stating that Ms. Ferguson was under her care for "post traumatic stress syndrome and depression" resulting from the car accident and recommending that Mr. Ferguson take July 1–31, 1995 off from work. Def.'s Stmt of Facts 21. Ms. Ferguson provided this letter to Steve Neslen of the Smithsonian's Employee Assistant Program ("EAP"). *Id.* Ms. Reinckens testified that Ferguson's EAP, Steven Nelsen, recom-

mended that the Institute grant this leave. Reinckens, at 38:16–23. Mr. Nelsen wrote an e-mail indicating that plaintiff had submitted valid medical documentation justifying the leave. Hicks Ex. 1. On June 28, 1995, the defendant granted the request for leave for the month of July, but stated that plaintiff's leave would be without pay because she had no leave time available. ROI 34. The Institute later determined that paid leave was available in plaintiff's account, and permitted plaintiff to use paid leave for the month of July.

In late July 1995, Mr. Hicks drafted a memorandum to Ms. Ferguson requesting that she provide additional documentation about her current medical condition "as it related to her job assignments" to the Smithsonian's Occupational Health Services Center. *Id.* ¶ 26; ROI 36. The letter, in part, states:

> Please submit the requested medical information no later than the close of business on July 26, 1995, to allow time for me to be advised by the Smithsonian physicians before your anticipated return to work.

ROI 36. The attachments to Mr. Hicks' memorandum required information including plaintiff's medical chart, narratives on numerous subjects such as compliance with therapy, a description of activities that helped and aggravated plaintiff's neck and the nature and location of symptoms. *Id.*

Mr. Hicks' memorandum requesting medical documentation was dated July 21, 1995, and was delivered to Ms. Ferguson's home by Federal Express on Saturday, July 22, 1995. *Id.* Her response was due by close of business on Wednesday, July 26, 2002. Mr. Neslen testified that it

---

**1.** "ROI" refers to tab numbers originally contained in the EEO Report of Investigation, conducted by Mr. Bert Silver in this case.

would be difficult for an employee to return a request in that period of time. Neslen Dep. at 34, 37–38.

On Monday, July 24, 1995, Ms. Ferguson left a message for Mr. Hicks stating that she had received the July 21 memorandum, but that she could not provide the information requested by Wednesday, July 26, as required, because she did not have a doctor's appointment until July 27. Reinckens Dep., Ex. 3.

On July 27, 1995, Ms. Ferguson's attorney, June Kalijarvi, faxed a letter to defendant's Acting General Counsel. ROI 37. This letter expressed "deep[ ] concern" over defendant's failure to provide plaintiff with reasonable accommodation, and complained that Ms. Ferguson's supervisors had been harassing the plaintiff. *Id.* The letter further stated: "I would appreciate it if the demand that Ms. Ferguson provide additional medical reports be rescinded." *Id.*

On August 1, 1995, Ms. Ferguson apparently called Mr. Hicks from her doctor's office. Pl.'s Stmt. of Facts, 35. Mr. Hicks testified that, during this conversation, he told Ms. Ferguson that she could not return to work immediately because she had not yet seen the doctor and did not have a return to work certificate. Hicks Dep. at 91–92. Ms. Reinckens testified that Mr. Hicks informed her that Ms. Ferguson had called and was attempting to see the doctor. Reinckens Dep. at 104–106. On August 2, 1995, Ms. Ferguson called Mr. Hicks again and left two messages indicating that she had seen the doctor and did not have a return to work certificate, but would fax something to Mr. Hicks. Reinckens Dep., Ex. 3. On August 3, Ms. Ferguson faxed a note from her doctor to two different fax numbers at the Museum, indicating that she would have to be on medical leave until August 25, 1995. *Id.* at 128. Ferguson argues that she was enti-

tled to unpaid leave under the FMLA if the Museum did not wish to provide her paid medical leave during August. Pl.s Stmt. of Facts 57, 58.

Ms. Reinckens was the responsible agency official who recommended Ms. Ferguson's termination. Pl.'s Stmt. of Facts, 41. Ms. Reinckens first discussed the possibility of terminating plaintiff with some of her colleagues in early August. Reinckens Dep. at 83. Ms. Reinckens first met with Director Newsome, and then discussed the possibility of terminating plaintiff at a larger management meeting. *Id.* at 84. According to Ms. Reinckens, Mr. Newsome was angry, frustrated and upset about the letter received from attorney June Kalijarvi. *Id.* at 208, 236–37. At deposition, however, Mr. Newsome denied being angry or frustrated by the letter and, rather, stated that he could "barely recall" the letter. Newsome Dep. at 50.

Ms. Reinckens testified that she "relied on a lot of other opinions outside of [her] office" in firing Ms. Ferguson. Reinckens Dep. at 209. While Ms. Reinckens' testimony is somewhat vague, she appears to state that she had three conversations with different members of the management team regarding the termination of Ms. Ferguson's employment. *Id.* at 210. Each of these meetings occurred after she had received Attorney Kalijarivi's faxed letter of July 27, 1995. *Id.* at 84, 103–07.

Reinckens claims that her first meeting occurred with Director Newsome, when she discussed possible termination of plaintiff for the first time, before discussing the possibility with other management officials. Reinckens Dep. at 84. She further testified that, after conversations with Connie Royal, Steve Neslen, Dolph Sands and Marilyn Slomba, she reported the "recommendations" arising from those conversations to Mr. Newsome. *Id.* During her conversation with Mr. Newsome,

either Ms. Reinckens or Mr. Newsome "mentioned that we thought Eve would be litigious." *Id.*

Ms. Reinckens testified that her second meeting with staff regarding Ms. Ferguson's possible termination included Alan Ullberg, Marilyn Slomba and Connie Royal. Reinckens Dep. at 103–04. However, Ms. Royal and Ms. Slomba both deny participating in any such discussion. *See* Royal Dep. at 25–27; Slomba Dep. at 11–12. Mr. Neslen also does not recall being consulted about Ms. Ferguson's possible termination.

Ms. Reinckens also testified that she consulted with Mr. Hicks prior to firing Ms. Ferguson. Reinckens Dep. at 104. However, Mr. Hicks was on vacation in Mexico during early August, and he testified that he did not recall being consulted or notified by Reinckens or Newsome regarding the possibility of Ms. Ferguson's termination. Hicks Dep. at 23–32, 82–83. Furthermore, Mr. Hicks testified that he had no intention of terminating Ms. Ferguson despite the attendance problems that he had documented, nor had he discussed the possibility of such action with plaintiff. Hicks Dep. at 130–31, 109–11.

On Tuesday, August 8, 1995, Ms. Ferguson received a memorandum from Ms. Reinckens terminating her employment. Def.'s Mot., Ex. P. The memorandum states: "It is my decision to separate you during your trial period because of your poor attendance. Your separation will be effective at the close of business August 11, 1995." *Id.*

Later, Ms. Reinckens told an EEO investigator that Ferguson was fired: " . . . because she did not come to work and did not provide medical documentation as to why she was not at work. We asked for documentation but did not get it. . . ." ROI. The affidavit provided to the EEO investigator failed to mention any prob-

lems with tardiness as the cause of Ms. Ferguson's termination. At deposition, Ms. Reinckens testified that Ms. Ferguson was fired for "poor attendance," and, specifically, a "pattern of coming late, leaving early." Reinckens Dep. at 75. She averred that Ms. Ferguson's attendance problems "created an atmosphere of distrust and concern." *Id.* at 76. She further stated that "medical leave was not the issue" in Ms. Ferguson's termination. *Id.* at 70; *see also id.* at 127.

## II. Analysis

### A. Legal Standard for Summary Judgment

Summary judgment is granted pursuant to Fed.R.Civ.P. 56 only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the evidence in the light most favorable to the nonmoving party, according that party the benefit of all reasonable inferences. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, in ruling on a motion for summary judgment, the Court will grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not in dispute.

### B. The *McDonnell Douglas* Framework

The allocation of burdens of proof in a Rehabilitation Act retaliation case follows the general rules enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McGill v. Munoz*, 203 F.3d 843, 845 (D.C.Cir. 2000). To establish a prima facie case for

retaliation, a plaintiff must show that (1) the plaintiff was engaged in a protected activity, (2) the employer was aware of the activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Jones v. Washington Metro. Area Transit*, 205 F.3d 428, 433 (2000).

The Supreme Court has stated that the burden on the plaintiff of establishing the prima facie case is "not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In meeting her ultimate burden, plaintiff may rely on a combination of "three possible sources of evidence": "(1) evidence she used to establish her prima facie case; (2) evidence that the defendants' proffered explanation for her termination was false; and (3) any additional evidence of discriminatory motive." *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C.Cir.2002).

Once plaintiff has established a prima facie case of retaliation, a presumption is created that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then shifts to the employer to articulate, with clarity and reasonable specificity, a legitimate, nondiscriminatory reasons for the retaliatory employment actions suffered by the plaintiff. *Id.; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The employer must introduce evidence that presents reasons for its actions, which would support a finding that the unlawful discrimination was not the cause of the employment action. *Burdine*, 450 U.S. at 254–255, 101 S.Ct. 1089. If the defendant satisfies the burden of production, the presumption of discrimina-

tion raised by the prima facie case is rebutted. *Id.* at 255, 101 S.Ct. 1089. The burden then shifts back to the plaintiff to show that the proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817; *St Mary's Honor Ctr.*, 509 U.S. at 508, 113 S.Ct. 2742.

Once both parties have met their burdens under the *McDonnell Douglas* burden-shifting scheme, the scheme becomes irrelevant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc). Rather, the relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290.

In considering a motion for summary judgment, the Court's analysis focuses on:

> whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka,* 156 F.3d at 1289. However, a plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, in some cases, a plaintiff's strong prima facie case may so strongly suggest the existence of intentional discrimination so as to permit plaintiff to survive summary judgment. *Id.* n. 4 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

## C. Defendant's Motion for Summary Judgment

There are genuinely disputed material facts that preclude an entry of summary judgment for defendant in this matter. Plaintiff has identified sufficient evidence that, when all reasonable inferences are drawn in her favor, would permit a reasonable jury to find that defendant acted with an impermissible and retaliatory motive in terminating plaintiff's employment.

### 1. Plaintiff's Prima Facie Case

■ Plaintiff has established her prima facie case of retaliation. It is undisputed that plaintiff suffered an adverse employment action, termination of her employment at the Anacostia Museum. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. It is further undisputed that plaintiff sent a letter of protest to defendants, and that defendants received and were aware of this letter. However, defendant maintains that there was not a basis in law for the relief requested in attorney Kalijarvi's letter. Presumably, defendant intends by this to suggest that plaintiff's attorney's letter is not, therefore, properly characterized as protected activity. The D.C. Circuit has recognized a letter complaining of discrimination as protected activity. *Jones,* 205 F.3d at 433. Furthermore, so long as the letter's charges were based on a good faith, reasonable belief that plaintiff had been discriminated against, the letter will be considered protected activity. *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Parker v. Baltimore & Ohio Railroad Co.,* 652 F.2d 1012, 1019–20 (D.C.Cir.1981); *see Love v. Re/ Max of Am., Inc.,* 738 F.2d 383, 385 (10th Cir.1984) ("every circuit that has considered the issue ... has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated"). The Court has located no record evidence, which would suggest that Attorney Kalijarvi's letter was written in bad faith. Furthermore, given plaintiff's on-the-job accident, the communications between defendant and plaintiff regarding necessary accommodations, and the work restrictions prescribed by plaintiff's doctors, the request for accommodation contained in the attorney's letter was not unreasonable. Accordingly, the Court finds that the letter to defendant's General Counsel constituted protected activity.

■ Defendant contends that plaintiff has failed to establish her prima facie case because she has not shown a causal connection between the protest letter and plaintiff's termination. *See* Def.'s Mot. at 15. However, causation may be established by showing that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *see also Cones v. Shalala,* 199 F.3d 512 (D.C.Cir.2000) (strong timing evidence alone is sufficient to show a causal connection). Here, plaintiff was terminated a little more than a week after her attorney faxed a letter to the defendant. Furthermore, the record indicates that plaintiff's supervisors did not begin discussing her termination until after the letter was received. This evidence is sufficient to establish the causal element of

plaintiff's prima facie case. Thus, the Court finds that plaintiff has met her prima facie burden.

### 2. Defendant's Reasons for Plaintiff's Termination

■ Plaintiff does not dispute that the defendant has met its burden to proffer a legitimate, non-discriminatory reason for her termination. *See* Pl.'s Mot. at 23. Defendant states that its reasons for terminating Ms. Ferguson are: her record of poor attendance, including chronic tardiness and her failure to justify her unauthorized absence in August 1995 with any of the medical information requested. Def.'s Mot. at 1–2.

■ Plaintiff maintains that defendant's reasons are pretextual. A plaintiff may establish that she is the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence" and that a discriminatory motive was the real reason. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097. In some instances, merely rendering evidence that undercuts an employer's explanation may be insufficient to infer discrimination. *Aka,* 156 F.3d at 1290–94; *see also Fischbach,* 86 F.3d at 1183 (to rebut a nondiscriminatory reason given by an employer, " '[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible' "). However, in *Aka,* the D.C. Circuit explained that: "If the jury can infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination.... The jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent." *Id.* at 1293.

Plaintiff points to several factors that would permit a reasonable jury to conclude that defendant's proffered reasons are pretextual. Specifically, plaintiff argues that evidence of the timing of her termination, evidence that the Museum Director was angry about her attorney's letter, the fact that defendant had already penalized her for the instances of poor attendance, and the defendant's conflicting explanations of the reasons for plaintiff's termination present genuine issues of fact that preclude summary judgment in this case.

Ms. Ferguson was fired within twelve calendar days after her lawyer's letter protesting discrimination was faxed to defendant. The D.C. Circuit has recognized that the timing evidence may serve to rebut an employer's proffered legitimate reason. *See Cones,* 199 F.3d at 521.[2] Here, the only other "event" occurring shortly before Ms. Ferguson's termination arises out of the defendant's request for medical information. However, Ms. Reinckens, the individual primarily responsible for plaintiff's termination, testified that plaintiff's response to this request was not the motivating factor in her termination. Furthermore, in explaining her first conversation with Mr. Newsome about firing plaintiff, Ms. Reinckens noted that either she or the director stated that plaintiff would be "litigious," explaining: "I mean, I—we ... had received the letter from the attorney previously." Reinckens Dep. at 210. In light of this evidence, a reasonable jury might well conclude that plaintiff's attorney's letter spurred plaintiff's termination.

---

**2.** Defendant's argument that use of timing evidence constitutes a "strict liability" standard is unavailing. Def.'s Mot. at 12. The timing of plaintiff's termination is one piece of evidence upon which plaintiff may rely in her contention that a reasonable jury could find that her termination was motivated by intentional discrimination.

To the extent that defendant *does* argue that Ms. Ferguson was terminated for "poor attendance," plaintiff maintains that this reason is also pretextual because she had already been reprimanded and penalized for her attendance problems. Ms. Reinckens, at deposition, admitted that Ms. Ferguson's attendance problems only included events occurring before Ms. Ferguson went out on medical leave in July 1995. Reinckens Dep. at 75. Yet, Ms. Ferguson was placed on leave restriction in May 1995. Indeed, shortly before her leave restriction was to conclude, agency officials informed Ms. Ferguson that the leave restriction would be extended through August 17, 1995, as Ms. Ferguson would not be at work during the month of July. Thus, plaintiff argues, defendant had already selected an appropriate remedial measure for her poor attendance. The suggestion that the attendance problems warranted an additional penalty, when no further infractions had occurred due to Ms. Ferguson's absence from the office, strikes the Court as dubious. Indeed, it appears that defendant was not even contemplating plaintiff's termination at the time that Ms. Ferguson went on medical leave.[3]

At her deposition, Ms. Reinckens gave conflicting reasons for plaintiff's discharge. She stated that plaintiff "was terminated for a pattern of non-attendance, okay, and that's what the termination was for." Reinckens Dep. at 72. She insisted that the sole cause of Ms. Ferguson's termination was a "pattern of coming late, leaving early." *Id.* at 75; *see id.* at 71 ("medical leave was not the issue"). Yet, Ms. Reinckens also stated that Ms. Ferguson's

submission of medical certificates were "confusing" and "created an atmosphere of distrust and concern." *Id.* at 76. In addition, Ms. Reinckens' affidavit stated that plaintiff was terminated, in part, "because she did not come to work and did not provide medical documentation as to why she did not come to work. We asked for documentation but did not get it." Reinckens Affidavit ¶ 11 (April 15, 1996). Ms. Reinckens' credibility is clearly placed at issue by her apparently conflicting explanations of the reasons for plaintiff's termination. In light of the fact that Ms. Reinckens appears to have been the moving force in the decision to terminate plaintiff, the contradictions within her testimony raise issues of fact most suitable for consideration by a factfinder.

The conflicting explanations given by defendant's agents for Ms. Ferguson's termination are also sufficient to raise a reasonable inference that defendant's proffered reasons for the termination are pretextual. The inconsistent testimony given by Ms. Reinckens, Mr. Newsome and other Smithsonian employees regarding the motivating reasons for plaintiff's termination cast doubts on the asserted non-discriminatory, legitimate reasons. For example, on the one hand, she testified that plaintiff's failure to supply medical information was not a factor in her termination, where, on the other hand, she averred that it was a factor. The failure to provide medical documentation was not mentioned in plaintiff's termination letter. Nevertheless, defendant's brief argues that plaintiff was fired for failing to provide requested medical documentation. The conflicting reasons given for plaintiff's termination may, alone,

---

**3.** Ms. Reinckens admitted that there was no discussion of terminating plaintiff until receipt of the Kalijarvi letter. Reinckens Dep. at 81. *But see* Def.'s Mot. at 14 (noting that plaintiff's July 23, 1998 statements to claims examiner suggested that she was concerned that she might be terminated).

be sufficient to preclude summary judgment on plaintiff's claim. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir.1986) (material issue of disputed fact as to reason for discharge of employee, thus precluding summary judgment for employer on sex discrimination claim); *Starks v. George Court Co., Inc.*, 937 F.2d 311, 315 (7th Cir.1991) (inconsistencies in employer's version of events surrounding employee's departure).

To the extent that defendant attempts to rely on plaintiff's failure to provide documentation as a reason for her discharge, this reason is also suspect. Plaintiff was given five calendar days, including two that fell on a weekend, to provide the documentation requested. The July 21, 1995 request for information suggested that the documentation was needed to determine when Ms. Ferguson could return to work. Yet, Ms. Ferguson's medical leave was not due to expire until the end of July 1995. Nothing in the letter suggested that defendant was considering firing plaintiff if the information was not received by July 26, or that provision of the information was a condition of continued employment. Furthermore, the defendant's Labor Relations Specialist stated that failure to provide this documentation would not typically be a reason for discharge. Finally, defendant's suggestion that the letter from plaintiff's attorney constituted a refusal to provide the requested information is simply inaccurate; the letter stated: "I would appreciate it if the demand that Ms. Ferguson provide additional medical reports be rescinded."

Ms. Reinckens and Mr. Newsome gave conflicting testimony with respect to the reasons for plaintiff's termination. Specifically, Ms. Reinckens stated that Ms. Ferguson's performance were not related to her termination, whereas Mr. Newsome averred in his affidavit that the termination was based on performance problems. *Compare* Reinckens Dep. at 236 *with* Newsome Affidavit, 4/29/96 (telling EEOC investigator that termination was based on performance deficiencies). Mr. Newsome later denied that job performance was a factor. Newsome Dep. at 13.

Ms. Reinckens and Mr. Newsome also contradicted each other on the issue of whether Mr. Newsome was angry upon receipt of plaintiff's letter. Mr. Newsome stated that he was not angry about the letter. Newsome Dep. at 50. Ms. Reinckens, on the other hand, stated that Mr. Newsome was angry and upset when he learned of plaintiff's protest letter. Reinckens Dep. at 208.

Finally, the Court notes that Ms. Reinckens suggested that Mr. Hicks, Ms. Royal and Mr. Nelsen were part of the decision to fire Ms. Ferguson. Reinckens Dep. at 104–05. Yet, Mr. Hicks, plaintiff's most direct supervisor, was on vacation when plaintiff was terminated. Both he, Ms. Royal and Mr. Nelsen denied any involvement in the decision. Pl's Stmt. of Facts ¶¶ 51, 71, 87. Plaintiff argues that Ms. Reinckens' testimony regarding her consultation with other managerial employees was intended to portray a false impression that the decision to fire plaintiff was a decision reached by a consensus. Pl.'s Mot. at 37.

In *Aka*, the Circuit noted that, when it appears that an employer has fabricated a false explanation for an adverse employment action, or when the factfinder disbelieves the reasons proffered by a defendant, a jury may well infer that the employer is hiding a discriminatory intent. 156 F.3d at 1293–94; *see Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. Here,

the numerous inconsistencies in the testimony of the persons primarily responsible for plaintiff's termination, when coupled with the timing of plaintiff's termination, and the conflicting reasons given by defendant's agents for the termination, might well persuade a jury that defendant fired Ms. Ferguson because of the letter sent by her attorney to defendant's General Counsel.

Plaintiff has presented sufficient evidence to permit a reasonable jury to find that the defendant acted with a retaliatory motive in terminating plaintiff's employment at the Anacostia Museum a few days after her attorney submitted a letter requesting accommodations. While plaintiff's evidence is not conclusive, it clearly presents genuine issues of material fact, which are properly committed to a jury's consideration. *Aka,* 156 F.3d at 1289. It is the province of the jury to determine the credibility of plaintiff's claims and of defendant's proffered reasons for her termination. This case shall proceed to trial.

### Conclusion

For the foregoing reasons, and upon careful consideration of the defendant's motion to dismiss or, in the alternative, for summary judgment, the response and reply thereto, the entire record herein, and the applicable statutory and case law, it is hereby

**ORDERED** that defendant's motion to dismiss or, in the alternative, for summary judgment [31–1] [31–2] is **DENIED.**

**IT IS SO ORDERED.**

An appropriate Pre–Trial Order accompanies this Memorandum Opinion and Order.

### *PRE–TRIAL ORDER*

In light of the Memorandum Opinion filed today denying in defendant's motion for summary judgment, it is hereby

**ORDERED** that the parties shall file by no later than **October 30, 2002,** a Joint Pretrial Statement in strict compliance with Local Rules 16.5(b) and 16.5(d)(1), (2) & (3). The parties are directed to make good faith efforts to agree on proposed voir dire questions and jury instructions; it is

**FURTHER ORDERED** that Local Rule 16.5(e) objections shall be filed by each party by no later than **November 14, 2002;** it is

**FURTHER ORDERED** that responses to objections shall be filed by **November 28, 2002;** it is

**FURTHER ORDERED** that replies shall be filed by **December 9, 2002;** it is

**FURTHER ORDERED** that there shall be no surreplies; it is

**FURTHER ORDERED** that in order to aid the Court in the expeditious resolution of pretrial issues, the following format shall be adhered to for the filing of objections, responses, and replies: (1) Each party shall convert each item listed in Rule 16.5 into a 2–column table, fill in the left side of the table with the party's statement, list, designation, etc., and then serve all counsel with a computer floppy disk of this submission. Counsel shall certify that this version of the Rule 16.5 submission is identical to the one filed with the Court. (2) Opposing counsel shall file its Rule 16.5(e) objection by responding to each item point-by-point and filling in the right side of the table. A blank space will indicate to the Court that no objection exists. Two examples are provided below:

| CAPTION | |
| --- | --- |
| Plaintiff's Proposed Voir Dire | Defendant's Objections |
| 1. Do any of you, members of your family, or close friends have a personal or business relationship with any members of the Court, plaintiff or his counsel, or defendant or his counsel? | 1. [Blank] [Indicates agreement.] |
| 2. | 2. |

| CAPTION | |
| --- | --- |
| Defendant's Witness List | Plaintiff's Objections |
| 1. John Marshall, Chief Justice of the United States Supreme Court. Chief Justice Marshall will testify to his opinion in *Marbury v. Madison.* | 1. [Blank] [Indicates no objection.] |
| 2. | 2. |

It is **FURTHER ORDERED** that parties are directed not to cross-reference documents or base objections on statements made in previous pleadings or papers without quoting the relevant section in full, and it is

**FURTHER ORDERED** that a Pretrial Conference is scheduled in this case for **January 17, 2003** at **12:00 p.m.;** it is

**FURTHER ORDERED** that a Trial date will be scheduled at the Pretrial Conference; and it is

**FURTHER ORDERED** that by no later than **September 30, 2002** at **5:00 p.m.** the parties shall inform the Court's chambers whether they will consent to a United States Magistrate Judge presiding over further proceedings in this case, including the jury trial.

**IT IS SO ORDERED.**