George W. STOVER, Plaintiff,

v.

CHAIRMAN, EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Defendant.

Civ. A. No. 86–1325.

United States District Court,
District of Columbia.

July 2, 1987.

George W. Stover, pro se.

Frederick W. Ford, E.E.O.C. Legal Services, Washington, D.C., for defendant.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This case is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, defendant's motion will be granted in part and denied in part.

Plaintiff began working for the Equal Employment Opportunity Commission (EEOC) in August 1983, serving first as Chief of the Employment Branch in the EEOC's Personnel Office and later as Chief of that office's Employee Relations Branch. In September 1984 he was reassigned from the Personnel Office to the Office of Program Research (OPR), where he worked in the Experimental Programs Division (EPD). On May 29, 1985, plaintiff received notice that his division was being abolished. For purposes of applying reduction-in-force (RIF) procedures, defendant defined the competitive area as the Office of Program Research, EEOC Headquarters. Pursuant to the RIF procedures, in July 1985 plaintiff was offered and accepted a position as a Statistical Clerk, with grade and salary retention at the GS–13 level for two years.

Shortly thereafter, plaintiff filed an appeal with the Merit Systems Protection Board (MSPB), challenging the RIF on the grounds that (1) the agency defined the competitive area in an impermissibly narrow manner that failed to provide for fair and adequate competition as required by Federal Personnel Manual (FPM) Chapter 351 and (2) the agency violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, by deliberately placing him in a division that was slated for abolition.[1] Following a hearing on these claims, the MSPB's presiding official affirmed the agency's action, and that decision was upheld on appeal to the full Board. Plaintiff then commenced this action *pro se*, again challenging the agency's designation of the competitive area and claiming that he had been intentionally transferred to a division targeted for extinction in violation of the ADEA.

Plaintiff's contention that the Commission improperly limited the competitive area to OPR, and thereby prevented fair and adequate competition, is without merit. Plaintiff stipulated at the MSPB level that he did not contest the actual application of the RIF procedures regarding competitive levels, retention rights, notice, or assign-

ment rights, and further, that he did not contest the fact that a reorganization occurred. His sole claim is that the EEOC's designation of OPR as the competitive area to which the RIF procedures should be applied violated governing civil service regulations.

The regulation in question, 5 C.F. R. § 351.402(b), provides:

The standard for a competitive area is that it include all or that part of an agency in which employees are assigned under a single administrative authority. A competitive area in the departmental service meets this standard when it covers a primary subdivision of an agency in the local commuting area. A competitive area in the field service meets this standard when it covers a field installation in the local commuting area.

In addition, Chapter 351 of the FPM states that:

An agency's different activities, although located side by side, may be separate competitive areas if each is:

(1) under a separate administrative authority;

(2) independent of others in operation, staff, work functions, and personnel administration; and

(3) separately organized and clearly distinguished from the others.

As the Federal Circuit has observed, these requirements are designed

to limit the effects of a RIF to the administrative component whose management decided the reduction was necessary. Ideally, the regulations permit a single administrative unit to plan and carry out the entire personnel action with only minimal effects on the remainder of the agency's administrative structure.

*Grier v. Department of Health and Human Services,* 750 F.2d 944, 946 (Fed.Cir. 1984). "Although a competitive area theoretically should encompass no less than a single distinct agency subdivision and no more than a single commuting area, an

---

1. Plaintiff also alleged that favoritism and personal bias also influenced the application of the RIF procedures. These allegations were appar-

ently dropped pursuant to a stipulation entered in the proceedings before the MSPB, and were not incorporated in his complaint in this action.

agency *may* create [larger] competitive areas...." *Id.* (emphasis added). Under *Grier* then, it is clear that an agency is permitted to limit its designation of a competitive area to a single primary subdivision, such as OPR, and that, while it may expand that area if it so chooses, it is not legally obligated to do so.

Plaintiff contends that a competitive area may only be limited to a primary subdivision in agencies that are part of the "departmental services"—*i.e.,* executive cabinet level departments; independent establishments such as the EEOC, he claims, must establish as their competitive area the whole portion of that agency located in a local commuting area. The distinction plaintiff seeks to draw, however, finds no support in the decisions of either the MSPB or the courts; indeed, it has been implicitly rejected by a number of cases which have upheld competitive area designations limited to single divisions within other independent establishments.[2] *See Ginnodo v. Office of Personnel Management,* 753 F.2d 1061 (Fed.Cir.1985) (upholding designation of competitive area that consisted of a one-person office within OPM); *May v. Interstate Commerce Commission,* 84 FMSR 5374 (1984) (upholding limitation of competitive area to Office of Hearings in ICC); *Tuggle v. Consumer Product Safety Commission,* 84 FMSR 5242 (1984) (upholding designation of single Commissioner's Office of only five persons within CPSC).

In view of the foregoing, the court concludes that defendant's designation of OPR as the competitive area was proper, and therefore that defendant is entitled to summary judgment on Count II of the complaint.

▇▇ If plaintiff is to prevail, then, he must show that the Commission's RIF decision, although properly executed, was improperly motivated by discriminatory animus based on his age. He contends that Warren Bullock, Director of the Personnel Operations Division, reassigned him to OPR in order to make room for his "younger cronies," and simultaneously to force plaintiff out of government service. Plaintiff alleges that at the time of his reassignment in September 1984, Bullock knew that the Experimental Programs Division in OPR was a likely candidate for abolition; it was not until the RIF was announced in May 1985, however, that plaintiff himself understood the full extent of Bullock's alleged machinations.

Defendant moves for summary judgment on plaintiff's ADEA count on the ground that it fails to state a claim upon which relief can be granted. This is so, defendant contends, because if true, the allegations of the complaint fail to state even a prima facie case of discrimination.[3] The court cannot agree.

▇▇ The elements of a prima facie case of age discrimination in a RIF setting are, as defendant points out, (1) a showing that plaintiff was within the protected group and was adversely affected by the RIF; (2) a showing that he was qualified to assume another position at the time of the RIF; and (3) production of some evidence, direct or circumstantial, from which a factfinder may find that the employer intended to discriminate. *Williams v. General Motors*

2. "Independent establishments" are defined as: "(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an executive department, military department, government corporation, or part thereof, or part of an independent establishment; and
(2) the General Accounting Office."
5 U.S.C. § 104.

3. Defendant has also moved to dismiss plaintiff's ADEA claim on the theory that plaintiff failed to file his complaint within the time prescribed by the ADEA. As the alleged discriminatory act took place on September 2, 1984, plaintiff was obliged to file within 180 days of that act, or by March 1, 1985, in order to comply with the statute's filing requirements. *See* 29 U.S.C. § 663a(d). Of course, section 633a(d) operates more in the nature of a statute of limitations subject to tolling rather than a jurisdictional prerequisite to suit. *Kennedy v. Whitehurst,* 690 F.2d 951 (D.C.Cir.1982). Here, plaintiff made it abundantly clear that he did not and could not appreciate the adverse or discriminatory nature of his transfer until the RIF was announced nine months later. He filed his claim promptly after he learned of the RIF. The court concludes that under these circumstances, his complaint was timely filed.

*Corp.*, 656 F.2d 120 (5th Cir.1981). Defendant claims plaintiff cannot satisfy the latter two requirements because the undisputed evidence before the MSPB revealed that he was not qualified for any of the seven positions open in OPR, and because it is undisputed that, of the four individuals that plaintiff claims were preferentially transferred out of EPD prior to the RIF, two were over 40 and two were under 40, thus demonstrating the absence of age discrimination.

Defendant's contentions are flawed, however, in at least two respects. First, whatever the undisputed evidence before the MSPB, that evidence has not been put before this court. Rather, defense counsel has simply attached the opinions of the MSPB to the motion for summary judgment, as well as his own unsworn declaration, pursuant to 28 U.S.C. § 1746, that the recitation and account of testimony given by witnesses before the MSPB set out in defendant's motion and reply brief is, to the best of counsel's knowledge, accurate and correct. This court's review of plaintiff's claim before the MSPB, however, is *de novo. Nabors v. United States,* 568 F.2d 657 (9th Cir.1978). While the court may consider the administrative record when relevant, a grant of summary judgment based on the factual findings of the MSPB presiding official and the factual representations of defense counsel would effectively deny plaintiff his right to a *de novo* hearing. Second and more importantly, the essence of plaintiff's ADEA claim is not that the RIF was carried out in a discriminatory fashion, but that the events prior to the RIF were improper. For this reason plaintiff's claim cannot be neatly analyzed according to the framework set out in *Williams v. General Motors Corp.;* whether or not plaintiff was qualified for any of the seven vacancies in OPR after the RIF is essentially immaterial to his claim that Warren Bullock transferred him to EPD with the knowledge that that division's days were numbered, and with the intent and purpose of getting rid of him. It is true that plaintiff has offered little evidence other than his own belief in support of this claim, but defendant's representations concerning undisputed testimony before the MSPB do not negate that claim, or so impugn it that this court must enter summary judgment in favor of defendant.[4]

Accordingly, for all the foregoing reasons, it is this 1st day of July, 1987

ORDERED that defendant's motion to dismiss count I of the complaint be and it hereby is denied; and it is

FURTHER ORDERED that defendant's motion for summary judgment as to count II of the complaint be and it hereby is granted.

---

4. Defendant's representations would, if accepted, negate plaintiff's claims concerning the preferential pre-RIF transfer of certain employees out of EPD. His allegations concerning his own transfer *to* EPD would nevertheless continue to remain viable, however. Because the court must go to trial on this latter claim, and because plaintiff is entitled to *de novo* review on his ADEA claims in general, the court declines to grant defendant summary judgment on the propriety of the transfer of certain EPD employees just prior to the RIF.