Lisa A. CLIFTON, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant.

No. 97–2302 (TFH).

United States District Court, District of Columbia.

Feb. 17, 1999.

John Michael Clifford, Clifford, Lyons & Garde, Washington, DC, for Plaintiff.

Juanita A. Crowley, Steven Franklin Cherry, Wilmer, Cutler & Pickering, Washington, DC, for Defendant.

### MEMORANDUM OPINION

HOGAN, District Judge.

Plaintiff has filed this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Defendant has moved for summary judgment. After carefully reviewing the submissions of the parties, the Court will grant defendant's motion with respect to both counts.

### I.

Plaintiff Lisa Clifton began working at defendant Federal National Mortgage Association (Fannie Mae) on January 3, 1983. On November 1 of that year, she was placed in Fannie Mae's Controller's department, where she remained throughout her tenure with the company. Until 1995, Clifton was employed in the Controller's department Financial Reporting unit. Leanne Spencer, the Controller's Vice President for Financial Reporting, headed that section. Christine Cahn was next in the Financial Reporting section and reported directly to Spencer. Clifton and Bahram Fozouni, Clifton's co-worker in Financial Reporting, reported to Cahn.

In the fall of 1995, Fannie Mae reorganized the Controller's department. The purpose of the reorganization was twofold. First, Sampath Rajappa, Fannie Mae's Controller, sought to realign responsibilities within the department along "functional lines." This meant that job responsibilities and personnel would be regrouped so that similar tasks were performed by the same unit. Second, Rajappa sought to shift the focus of the Financial Reporting unit from reporting financial data to increased analysis of financial trends.

Following the 1995 reorganization, the Financial Reporting department within which Clifton had been working was split into two units, the Budget group and the Financial Reporting department. Clifton and Fozouni were assigned to work in the Financial Reporting department under Leanne Spencer. Brian Harris and Jonathan Boyles, two employees previously assigned to another section of the Controller's department, joined Clifton and Fozouni.

As a result of the reorganization, Clifton and Fozouni retained their job duties that were to be performed in the Financial Reporting group and relinquished duties that would be performed in the Budget group, which was headed by Christine Cahn. Five of Clifton's prior tasks were transferred to Cahn's Budget group, while three remained along with Clifton in the Financial Reporting unit under Leanne Spencer. Clifton's primary task, which was to break down administrative expenses, was substantially automated.

Just prior to Clifton's change of duties, Clifton began an effort to reduce her schedule from full to part-time. This request was motivated by Clifton's desire to spend more time with her 5 year-old daughter, who had just changed school schedules. Under Fannie Mae's employment policy, regular full time employees may request that they be employed on a part-time basis. Approval of such requests "depend[s] on management review, business need and resources available at the time of the request." 1994 Fannie Mae Employee Handbook at 7–20. In the fall of 1995, Clifton discussed the possibility of a part-time schedule with Richard DePe-

tris, one of her supervisors at the Financial Reporting section. DePetris informed Clifton that her request would have to be considered by Leanne Spencer at a later date. When Clifton repeated her request over the next several months, she was again told that her request would have to wait.[1]

Clifton's request for part-time work coincided with her transition to the Financial Reporting Unit under Spencer. According to defendant, DePetris and Spencer realized several months after the reorganization that Clifton did not have sufficient work to do in her new role. DePetris prepared a chart of Clifton's responsibilities that indicated that Clifton had lost approximately 60% of her job functions. Because of this lack of work, Fannie Mae eliminated Clifton's employment position and terminated her on October 3, 1996. At that time, Clifton was 43 years old; Mike Fozouni was 40; and Boyles and Harris were both 30 years old. The decision-makers at Fannie Mae, DePetris, Spencer and Rajappa, were all over 40. Christine Cahn was 41.

In October 1997, Clifton filed this lawsuit against Fannie Mae. Clifton claims that Fannie Mae discriminated against her because of her age and sex. She alleges violations of Title VII and the ADEA. Defendant has moved for summary judgment with respect to both counts. The issues will be considered in turn.

## II.

### A. Standard of Review

The defendant has moved for summary judgment under Fed.R.Civ.P. 56 on both counts. In order for the Court to grant summary judgment under Rule 56, the moving party must demonstrate that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the summary judgment issue, the Court must view all of the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party's opposition must consist of more than unsupported allegations. Rather, it must be supported by affidavits or other competent evidence setting forth specific facts showing there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must come forward with proof that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### B. Title VII Claim

As this case arises under Title VII, the Court turns to the familiar burden-shifting analysis originally set forth by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The first step of the *McDonnell Douglas* framework is for plaintiff to establish a prima facie case of discrimination. *Id.* at 802–05, 93 S.Ct. 1817. Second, once the plaintiff establishes a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for its personnel decision. *Id.* Finally, plaintiff has the burden of establishing by a preponderance of the evidence that defendant's articulated reason is pretextual. *Id.*

Where a plaintiff is claiming that she was terminated because of unlawful discrimination she establishes a prima facie case by showing that (1) she belongs to a protected class; (2) she was qualified for the position at the time of termination, and was satisfying the normal requirements of her job; (3) she was terminated; and (4) other employees with comparable qualifications and work rec-

---

1. At some point during the pendency of plaintiff's part-time request, Fannie Mae decided to terminate Clifton. Nevertheless, Fannie Mae continued to give Clifton the impression that it was considering her request. Although this does not strike the Court as the most enlightened business practice, it does not constitute evidence of gender discrimination. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (absent discriminatory intent, employment decisions that are unwise or unfair do not violate Title VII).

ords who were not members of the protected class were not terminated. *See Keller v. Association of Am. Med. Colleges*, 644 F.Supp. 459, 462 (D.D.C.1985). Here, Clifton has provided sufficient evidence to establish her prima facie case. Clifton is a member of a protected class (female); there is no allegation that she was unqualified or incapable of performing her job, or a comparable job that survived the reorganization; she suffered an adverse action in the form of her termination; and other employees with similar qualifications, such as Clifton's co-worker Bahram Fozouni, were not terminated from their positions.

■ Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to show some legitimate, nondiscriminatory reason for its action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The evidence proffered by the employer would, if taken as true, "permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Here, Fannie Mae decided to reorganize the Controller's department and to shift various job functions to better suit its business objectives. Clifton's transfer to the Financial Reporting unit was a part of this reorganization. According to defendant, Clifton's supervisors realized subsequent to Clifton's transfer that she no longer had sufficient work. As a result, Fannie Mae eliminated her position. Eliminating an employee's position for lack of work is a business judgment and not a violation of Title VII. *See Newbury*, 1997 WL 664589, at *3 ("A decision as to which positions should be eliminated in a corporation's restructuring is a business decision."). Thus, taken as true, Fannie Mae's explanation satisfies its burden of articulating a legitimate, nondiscriminatory reason for Clifton's termination.

Once the defendant establishes a legitimate business reason for the termination action, the burden of production then shifts back to the plaintiff, who must establish by a preponderance of the evidence that the employer's stated reason is merely a pretext for discrimination. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Under our Circuit's most recent explication of this stage of the *McDonnell Douglas* framework, the focus of the Court's inquiry is on whether a reasonable jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff or any contrary evidence that may be available to the employer. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir.1998). The Court now turns to the factors suggested by *Aka* to determine if plaintiff has met her burden of demonstrating pretext.

■ Plaintiff does not contest the basic legitimacy of Fannie Mae's 1995 reorganization. Plaintiff's Opposition concedes that the reorganization was motivated by sound business reasons. Additionally, plaintiff does not attack Fannie Mae's ultimate decision to eliminate her job, as her post-reorganization position with Fannie Mae did not entail sufficient work for a full-time employee. Rather, plaintiff attacks Fannie Mae's decision to transfer Clifton into a position that did not involve enough work for her to remain at Fannie Mae. Essentially, Clifton is alleging that Fannie Mae (in the person of Leanne Spencer) knew before the transfer decision was made that she would not have sufficient work in her new position, and that her termination would result. *Cf. Stover v. E.E.O.C.*, 673 F.Supp. 522, 525 (D.D.C.1987) (holding that plaintiff established prima facie case under the ADEA where employer "transferred him [to a division] with the knowledge that that division's days were numbered and with the intent and purpose of getting rid of him.").

The evidence in the record regarding Fannie Mae's placement of Clifton is ambiguous. On the one hand, Fannie Mae transferred Clifton into a section of the Controller's department that contained only 37% of her former duties. As noted above, the Financial Reporting Unit under Leanne Spencer retained only three of Clifton's eight job responsibilities. Given this structure, it is conceivable that Spencer and DePetris knew

that Clifton would be underemployed in her new position. On the other hand, it appears that Clifton retained the duties that fit within her "expertise." Furthermore, Clifton's most time-consuming task before the reorganization, segmenting business expenses, was substantially automated. Thus, Clifton was going to lose the bulk of her responsibilities no matter where she was placed following the reorganization.

 Given this ambiguity, the Court examines the remainder of the record to determine whether plaintiff's case survives summary judgment. This comports with the Court's duty to "consider all the evidence in its full context in deciding whether the plaintiff has met [her] burden of showing that a reasonable jury could conclude that [she] had suffered discrimination and accordingly summary judgment is inappropriate." *Aka*, 156 F.3d at 1290. In this case, Clifton has offered no reliable evidence that Fannie Mae engaged in sex discrimination. The thrust of Clifton's complaint and her deposition testimony—that Fannie Mae discriminated against her because of her request for part-time work[2]—does not form the basis for a Title VII claim. A failure to grant part-time work, including part-time work requested for family-related reasons, does not violate Title VII. *See, e.g., Fisher v. Vassar College*, 70 F.3d 1420, 1448 (2d Cir.1995) (claim based on discrimination against those with child-rearing responsibilities does not state a claim under Title VII for gender discrimination); *Fischbach*, 86 F.3d at 1183 (absent discriminatory intent, employment decisions that are unwise or unfair do not violate Title VII).

To state a Title VII claim based on Fannie Mae's attitude towards part-time work, Clifton must demonstrate that there is a question of material fact regarding Fannie Mae's treatment of requests for part-time work by women. The only testimony offered by Clifton suggesting that Fannie Mae discriminated against women who requested part-

time work is based on Fannie Mae's treatment of two male workers in the Controller's office, Sean Delaney and Hank Connelly. Sean Delaney was permitted to take an unpaid leave of absence from Fannie Mae to try and start his own restaurant in North Carolina. After the restaurant closed, Delaney returned to work in his former position. Hank Connelly arranged with Fannie Mae to work out of his home by computer.

The differences between these personnel decisions and Fannie Mae's decision with respect to Clifton are clear. First, the employment requests by Delaney and Connelly are not comparable to Clifton's request for part-time employment. Taking a leave of absence and working from home are not sufficiently similar to part-time work so as to provide a basis for finding unequal treatment. Second, Fannie Mae's decisions with respect to Delaney and Connelly were not affected by a departmental reorganization. Record evidence suggests that the reorganization eliminated the need for Clifton's position, even on a part-time basis.[3] Finally, there is no indication in the record that the Delaney and Connelly decisions were made by Leanne Spencer. A supervisor such as Spencer is free to frown on requests for part-time work, so long as she does not do so on the basis of prohibited criteria (i.e. sex). *See Fisher*, 70 F.3d at 1448. Thus plaintiff is left with nothing more than her general feeling that her request was treated differently because she is a woman. "A subjective belief, however genuine, cannot be the basis for judicial relief." *Newbury v. National Press Club*, 1997 WL 664589 (D.D.C.) (*citing Moore v. Reese*, 817 F.Supp. 1290, 1294 (D.Md.1993)).

Plaintiff has not demonstrated that Fannie Mae's proffered reason for Clifton's termination is a pretext for discrimination. While the record is ambiguous with respect to Fannie Mae's reassignment of Clifton, there is no evidence suggesting that Clifton was termi-

---

2. Clifton's deposition testimony featured the following exchange:

Q: What's your belief, Ms. Clifton, about why Fannie Mae terminated you?
A: Because I asked to work part-time.
Clifton Deposition at 13.

3. The organization chart assembled by DePetris indicated that Clifton had lost 60% of her job functions. The part time schedule Clifton was pursuing at Fannie Mae reduced her workload by only 22%. Thus, Clifton would have remained underemployed even on a part-time schedule.

nated because of her sex. Thus, at most this is a case where "the fact that there are material questions as to whether the employer has given the real explanation [does] not suffice to support an inference of discrimination." *Id.* As a result, the Court will grant summary judgment for the defendant with respect to this claim.

## C. ADEA Claim

■ The ADEA prohibits employers from engaging in age discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), but limits the class of persons protected by the statute to those person 40 years of age and older. *Id.* at § 631(a). To succeed in an ADEA claim, a plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a 'determining factor' in the employment decision." *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982).

■ Our Circuit uses the *McDonnell–Douglas* framework to evaluate an ADEA claim. *See, e.g., May v. Shuttle, Inc.,* 129 F.3d 165, 172 (D.C.Cir.1997); *Cuddy,* 694 F.2d at 856. To establish a prima facie case under the ADEA in a job elimination case, plaintiff must show that (1) she is over 40; (2) she was qualified for the position; (3) she was terminated; and (4) substantially younger, similarly-situated employees were treated more favorably.[4] *Id.* There is no real question that plaintiff has satisfied the first three elements of her prima facie case. Plaintiff is over 40 years old, and the second and third elements are identical to those that were deemed satisfied in plaintiff's Title VII claim.

In *O'Connor v. Consolidated Coin Caterers Corp.,* the Supreme Court addressed the fourth element of an ADEA plaintiff's prima facie case. 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The 56 year-old plaintiff in *O'Connor* had been terminated and replaced by an employee who was 40. The Fourth Circuit granted summary judgment for the defendant-employer, holding that the plaintiff could not satisfy the fourth element of his prima facie case because he was replaced by an individual who was 40 and therefore within the statutorily protected class. The Supreme Court rejected the Fourth Circuit's interpretation of the fourth element, holding that the relevant inquiry is the age disparity between the plaintiff and his replacement, not whether the replacement is or exceeds the age of 40. *Id.* at 313, 116 S.Ct. 1307. In commenting on the requisite age disparity, the Court stated that the inference of discrimination necessary to sustain an ADEA case "can not be drawn from the replacement of one worker with another worker insignificantly younger." *Id.*

The *O'Connor* case involved job replacement, and is therefore somewhat different than the job elimination scenario at issue in the instant case. However, *O'Connor* can be applied to job elimination cases by looking at the employee most similarly situated to the plaintiff, and examining the age disparity, if any, between the plaintiff and that "comparator" employee. This inquiry is consistent with the purpose of the prima facie case, which is to establish facts with a logical connection to illegal discrimination. *See id.* at 311, 116 S.Ct. 1307.

■ In this case, the employee most similarly situated to plaintiff was Bahram Fozouni. Fozouni was Clifton's co-worker under Cahn before the reorganization, and often shared duties with Clifton. Additionally, at her deposition Clifton stated that she believed Fozouni to be the most similarly situated employee to herself.[5] Bah-

---

4. The instant case may bear a closer resemblance to reduction-in-force cases than wrongful termination cases such as *Cuddy.* The prima facie case employed in ADEA reduction-in-force cases is substantially the same, except that under the final element the plaintiff must show "production of some evidence, direct or circumstantial, from which a factfinder may find that the employer intended to discriminate." *Stover,* 673 F.Supp. at 524. The Court's inquiry is identical under both formulations.

5. Plaintiff's deposition features the following exchange:

Q: Do you consider yourself to be equally similarly situated to [Fozouni, Boyles and Harris] or are you more like one than the others? Would you rank them in order as you think of them as compared to you?

A: Well, Mike Fozouni and I were transferred over from the same department, so we probably had more of a similar background.

ram Fozouni was 40 at the time of Clifton's termination. Because this is only a three year disparity, the Court holds that Clifton has failed to establish the fourth element of her prima facie case.[6] As result, the defendant's motion for summary judgment must be granted on this count as well.

## III.

For the reasons stated above, defendant's Motion for Summary Judgment is GRANTED. An order consistent with this Opinion will issue this same day.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendant's Motion for Summary Judgment [18–1] is GRANTED. As a consequence, this case is DISMISSED.

---

Clifton Deposition at 15. See also Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 15 ("Ms. Clifton was similarly situated to [Fozouni].").

6. The Court also notes that Clifton's direct supervisors at Fannie Mae—Richard DePetris, Leanne Spencer and Chrstine Cahn—were all over 40 at the time of her termination. This is relevant evidence that age discrimination has not occurred. *See Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 572 (7th Cir.1998) (noting that ADEA plaintiff terminated by person six years older has "tough row to hoe.").