**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS, Defendant.**

**No. CIV.A. 02–371(RBW).**

United States District Court, District of Columbia.

Aug. 13, 2003.

Barbara DeShona Brice–Brown, Robert Francis Goldamn, U.S. Equal Employment Opportunity Commission, Washington, DC, Counsel for Plaintiff.

Michael Alan Stern, Robert DeBerardinis, Office of DC Corporation Counsel, Washington, DC, Counsel for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

This lawsuit involves a claim of age discrimination. Plaintiff, the Equal Employment Opportunity Commission ("EEOC") has brought this action on behalf of Dora Smith, who alleges that she was terminated from her teaching position by the defendant because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (2000). Currently before the Court is the Defendant's Motion for Summary Judgment [# 33]. Because the Court concludes that there exists material facts that are genuinely at issue, defendant's motion must be denied.

### I. Factual Background

The facts underlying this lawsuit are straightforward: Dora Smith was a teacher in the District of Columbia Public

Schools ("DCPS") system for over 37 years.[1] EEOC's Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 1.[2] Plaintiff was approximately 62 years old when the operative events that form the nucleus of this lawsuit occurred.[3] After working at several other schools in the DCPS system, Ms. Smith joined the Woodson Senior High School's Business and Finance Academy staff at the beginning of the 1995–96 academic year, where she was employed as one of two social studies teachers. Pl.'s Opp'n at 5; Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), Statement of Material Facts as to Which Defendant Contends There is No Genuine Dispute ("Def.'s Stmt.") at 1. The director of the Business Academy was Barbara Birchette. Def.'s Stmt. at 1.

Near the end of the 1995–96 academic year, DCPS issued a memorandum indicating that, as "part of the deficit reduction plan in response to ... budgetary restraints ..." the Board of Education had approved a Reduction in Force ("RIF") for the 1996 fiscal year. Def.'s Mem., Exhibit ("Ex.") 1 (Memorandum from Franklin L. Smith, Superintendent of Schools, dated May 16, 1996). Notably, this RIF would be conducted in accordance with the revised RIF rules that had become effective on May 15, 1996. *Id.* According to these new rules, a determination regarding whether to terminate an employee would "not rest solely upon length of service, although this remain[ed] a factor." *Id.* Specifically, the new rules provided that a decision to retain or terminate an employee should be made based on the following factors:

(a) significant relevant contributions, accomplishment or performance;

(b) relevant professional experience as demonstrated on the job;

(c) office or school needs, including: curriculum, specialized education, degrees, licenses, and/or areas of expertise; and

(d) length of service.

Def.'s Mem., Ex. 2 (FY96 Reduction in Force Procedures) at 3.

It is not clear who decided that one of the two social studies positions would need to be eliminated at the Business and Finance Academy,[4] however, once that deci-

1. Plaintiff notes that defendant's statement of material facts as to which there is no genuine issue ("Def.'s Stmt.") states that Ms. Smith was employed by DCPS from 1968 until 1995. Def.'s Stmt. at 1. However, Ms. Smith states in her declaration that she was first employed by the defendant beginning in 1956 as a substitute teacher and became a "regular teacher" in 1959. Pl.'s Opp'n, Declaration of Dora Smith ("Smith Decl.") ¶ 9.

2. Because the complaint does not set forth the underlying circumstances relevant to this dispute, out of necessity the Court must rely on the parties' pleadings and the accompanying exhibits as its source of what the material facts are in this matter.

3. Plaintiff's date of birth is March 9, 1934. Pl.'s Opp'n, Smith Decl. ¶ 2.

4. Plaintiff correctly notes that there are several "conflicting explanations" regarding who made the decision to eliminate one of the two social studies positions. According to DCPS' first supplemental response to plaintiff's interrogatories, "Personnel Specialist Joyce Dews would have been primarily involved in [the decision to eliminate one social studies teacher]." Pl.'s Opp'n, Declaration of Robert Goldman ("Goldman Decl."), Ex. 2 ("Defendant's Supplemental Responses to EEOC's First Set of Interrogatories") ¶ 9. However, in its second supplemental response to plaintiff's interrogatories, defendant represented that this decision was made "[b]ased upon a mathematical calculation of the number of students within a school and the courses that would be taught within a particular discipline ...." Goldman Decl., Ex. 3 (Defendant's Supplemental Responses to EEOC's First Set of

sion was made, director Barbara Birchette had the responsibility of "rank[ing] a number of teachers based upon [a] Competitive Level Documentation Form [ ('CLDF') ], including Dora Smith and Susan Kay." Def.'s Stmt. at 3; Def.'s Mem. Ex. 6 (Deposition of Barbara Birchette dated September 11, 2002) ("Birchette Dep.") at 77–78.

A teacher's total score on his or her CLDF was determined by assigning a numerical value, not in excess of 25 points, in each of the four RIF categories contained in the 1996 Procedures. Def.'s Mem., Birchette Dep. at 78–82. Regarding Dora Smith's scores, Ms. Birchette awarded ten points in the first category, "Relevant Significant Contributions, Accomplishments or Performance." Def.'s Mem., Ex. 4 (Dora Smith's CLDF). In the notes accompanying the CLDF, Ms. Birchette noted that Ms. Smith "[p]rovides students with a wide variety of supplementary materials; [and] makes the classroom an informative environment for students." *Id.* In the second category, "Relevant Professional Experience as Demonstrated on the Job[,]" Ms. Smith received a score of 15 points, with Ms. Birchette noting that Ms. Smith had "taken various workshops through the school system." *Id.* Ms. Smith received ten points in the third category, "Office or School Needs[,]" where Ms. Birchette noted that Ms. Smith "[h]as an undergraduate and graduate degree and has done extensive work toward [a]

doctorate degree[.]" *Id.* Finally, Ms. Smith received the maximum 25 points in the last category, "Length of Service," which was mandated based on the period of time she had been employed by DCPS. *Id.* This last score was assigned by the Human Resources office, while the first three were assigned by director Birchette. *Id.* Ms. Smith also received an additional five points for being a District of Columbia resident, thus giving her a total score of 65. *Id.*

In contrast to Ms. Smith's total score of 65 points, Ms. Kay received a total score of 80 points. Def.'s Mem., Ex. 5 (Susan Kay's CLDF). Regarding her relevant contributions to the Business and Finance Academy, Ms. Kay was awarded the maximum 25 points, which Ms. Birchette concluded was based on Ms. Kay having

> [c]oordinated a multitude of school/subject related activities and forums including Woodson's participation on C–Span, national radio and TV shows, political forums with Capitol Hill Congressmen and staffers, "First Vote" as well as writing and publishing a national curriculum book this summer.

*Id.* Ms. Kay received 20 points in the second category (relevant professional experience), which Ms. Birchette stated was warranted because Ms. Kay

> [h]as [an] active, responsive and high energy classroom; emphasizes 'interactive' learning [by] bringing in many

---

Interrogatories) ¶ 1. However, Ralph Neal, the assistant superintendent of DCPS, testified in his deposition that it was the "director or the principal of the school[ ]" who determined what positions would be abolished. Pl.'s Opp'n, Deposition of Ralph Neal dated December 18, 2002 ("Neal Dep.") at 59. But, when asked how the decision was made to eliminate one of the two social studies positions at the Business Academy, Barbara Birchette testified during her deposition that she had "no idea" and that the decision was

"[n]ot anything [she] was involved with." Pl.'s Opp'n, Deposition of Barbara Birchette dated September 11, 2002 ("Birchette deposition") at 121. Defendant does not attempt to resolve the confusion on this issue in its pleadings, although the RIF procedures support Mr. Neal's testimony as they provide that "[p]rincipals shall determine the positions to be abolished as a result of new allocations." Def.'s Mem., Ex. 2 (FY96 Reduction in Force Procedures) at 2.

speakers to the classroom; coordinated many subject-related field trips; [and] assist[s] students in continuing to excel. *Id.* In the third category (needs of the school), Ms. Kay again received the maximum score of 25 points based upon the fact that she was

> [w]orking on a master's in political science; sponsored a 3 on 3 basketball tournament fundraiser with members of the Capitol Hill community; worked directly with the athletic department; took pictures for the yearbook; [and] assist[ed] with the many programs and activities of the Academy of Finance and Business.

*Id.* Finally, regarding the final category, Ms. Kay received the mandatory minimum score of only five points because she had only been employed with DCPS for three years and eight months. *Id.* She also received the additional five points for being a District of Columbia resident. *Id.*

Based on the results of the numerical rankings, DCPS contends that director Birchette terminated Dora Smith in June 1996 and retained Susan Kay as the sole social studies teacher at the Business Academy. Def.'s Stmt. at 4. Four months later, Rebecca Christian, "who was under the age of 30[,] was appointed to a social studies teaching position within the Business Academy." *Id.* The reason for her appointment was that she had been terminated from another DCPS school and, after appealing her decision and receiving a favorable determination by an arbitrator, she was reinstated at the Business Academy teaching social studies, although she previously taught English and did not have prior experience teaching social studies. Def.'s Stmt. at 4; Def.'s Mem., Ex. 7 (Deposition of Rebecca Christian dated September 9, 2002) ("Christian Dep.") at 62; Pl.'s Opp'n at 23; Pl.'s Opp'n, Christian Dep. at 29–30; 55.

## II. *Analysis*

### A.

Defendant has moved for summary judgment. Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255, 106 S.Ct. 2505. Summary judgment is mandated after there has been "adequate time for discovery . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment, nonetheless, is a "drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food & Drug Admin.,* 803 F.2d 1213, 1216 (D.C.Cir.1986). Summary judgment is accordingly not appropriate, for example, where "the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance . . ." *Id.* (citations omitted). Furthermore, when reviewing the evidence, "all inferences must be drawn in favor of the nonmoving party[.]" *Coward v. ADT Security Systems, Inc.,* 194 F.3d 155, 158 (D.C.Cir. 1999); *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1295 (D.C.Cir.1998).

## B.

■ To establish a *prima facie* case of age discrimination when relying on indirect evidence of purported discrimination,[5] a plaintiff must demonstrate that (1) she is over 40 years old; (2) she was qualified for the position; (3) she was discharged; and (4) she was disadvantaged in favor of a younger person. *Clifton v. Federal Nat'l Mortgage Ass'n*, 36 F.Supp.2d 20, 25 (D.D.C.1999); *Evans v. Atwood*, 38 F.Supp.2d 25, 31 (D.D.C.1999) (citations omitted); *see also Paquin v. Federal Nat'l Mortgage Assoc.*, 119 F.3d 23, 26 (D.C.Cir. 1997) (stating that the fourth element requires a plaintiff to show that she "was replaced by a younger person.") (citations omitted). Once a *prima facie* case has been established, the burden shifts to the employer to produce evidence showing that the plaintiff was terminated for a legitimate, non-discriminatory reason. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "This burden is one of production, not persuasion;" it does not involve a "credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the employer responds with credible evidence, the plaintiff must then show by a preponderance of the evidence that the employer's asserted legitimate reason is a "pretext" for discrimination by either indirectly showing that the employer's reason is pretextual or by showing directly that it was highly probable that the employer was motivated by discrimination. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Forman v. Small*, 271 F.3d 285, 292 (D.C.Cir.2001) (citing *Cuddy v. Carmen*, 762 F.2d 119, 122 (D.C.Cir.1985)).

■ Defendant concedes that plaintiff has established a *prima facie* case of discrimination. Def.'s Mem. at 8 ("Dora Smith ... was over the age of 40 in 1996[,] was qualified for the position of [a] high school social studies teacher .... [and] was terminated from her position ... while Susan Kay age 31 retained her position."). However, defendant argues that plaintiff cannot successfully satisfy her next element of proof because she cannot refute the defendant's articulated legitimate reason for her termination, namely, that one of the two social studies teacher positions had to be eliminated and director Birchette determined that Susan Kay was the more valuable teacher "because of her outstanding commitment to the students of the Business Academy ...." *Id.* at 8–9.

The defendant having articulated a legitimate, non-discriminatory reason for its employment decision,[6] "the presumption of

---

**5.** Plaintiff does not contend that she has direct evidence of discrimination. Notably, when asked at her deposition whether she "ever heard anyone at [Woodson] make a negative comment about her age?[,]" plaintiff replied "no." Def.'s Mem., Ex. 10 (Smith Dep.) at 27. Plaintiff also responded in the negative when asked whether she had "ever hear[d] anyone at the school make a negative comment generally about people over the age of 40 or about older teachers?" *Id.* Plaintiff testified that her belief that she was discriminated against stemmed from the fact that "Ms. Kay is a younger teacher.... I was 62 years old at the time and I thought there

might be age discrimination, and it was." *Id.* at 92.

**6.** The Court concludes that the defendant has met its burden of articulating a legitimate reason for its decision. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that employer met its burden of articulating " 'a legitimate, nondiscriminatory reason' for the plaintiff's termination 'by offering admissible evidence sufficient for the trier of fact to conclude that [plaintiff] was fired because of his failure to maintain accurate attendance records.' ") (citation omitted);

discrimination raised by the prima facie showing is rebutted and 'drops from the case.'" *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1078 (D.C.Cir.1999) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Plaintiff then "'has the opportunity to discredit the employer's explanation' . . . by demonstrating that the proffered reasons are a mere pretext for discrimination." *Id.* (citations omitted). If the plaintiff "is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [her]." *Paquin*, 119 F.3d at 27–28 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). The focus at this stage, as well as at trial, is

> on whether the jury [can] infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka*, 156 F.3d at 1289. Evidence in each of the three categories is not required, however. *Id.* Throughout the burden-

shifting analysis, plaintiff retains the burden of "'persuading the court that [she] has been the victim of intentional discrimination.'" *Id.* (citation omitted). Drawing all inferences in plaintiff's favor, *Aka*, 156 F.3d at 1295, the Court concludes for the following reasons that plaintiff has satisfied her burden by demonstrating that a reasonable juror could conclude that she was terminated because of her age.

First, a disputed issue is raised by Ms. Birchette's conflicting explanations regarding why Ms. Smith was terminated. In a memorandum from Ms. Birchette to Denise A. Baltimore, Acting Director of the EEOC regarding Ms. Smith's charge of discrimination, she stated, in part, that her decision to terminate Ms. Smith was based on the fact that

> Ms. Smith ha[d] numerous disciplinary problems and was offered assistance continually as well as intervention when necessary. Ms. Smith indicated she was unaccustomed to teaching underclassmen in grades 9–11 and that she previously had taught all seniors. Ms. Smith's attendance was also a problem . . . . Ms. Smith was absent a total of 47 days during the 1995–96 school year. Also, Ms. Smith attended staff meetings but did not attend planning meetings for the 1996–97 school year because she indicated that she would not be here so she saw no need to attend the meetings.

Pl.'s Opp'n, Smith Dep., Ex. 4 (Memorandum from Barbara Birchette to Dr. Denise A. Baltimore dated October 25, 1996) at 2.[7]

*Clifton*, 36 F.Supp.2d at 23 ("Eliminating an employee's position for lack of work is a business judgment and not a violation of Title VII.") (citation omitted); *Goss v. George Washington Univ.*, 942 F.Supp. 659, 664 (D.D.C.1996) ("Defendant's motion provides ample evidence of a legitimate, nondiscriminatory motive for plaintiff's dismissal—a reduction in force—that would rebut the presumption of intentional discrimination that

would arise from a prima facie showing . . . .") (citation omitted).

7. The Court notes that Ms. Birchette indicated in her memorandum that she was "not aware of the ages of any of the staff persons of the Academy." Pl.'s Opp'n, Birchette Dep., Ex. 4. Defendant has not alluded to this fact in its pleadings; furthermore, because the CLDF form indicated an employee's length of

Interestingly, none of this information was listed on plaintiff's CLDF; moreover, it contradicts director Birchette's evaluation of Ms. Smith for the 1995–96 school year. *See* Pl.'s Opp'n, Smith Dep. Ex. 11 (DCPS Annual Evaluation Form of Dora Smith). In that evaluation, Ms. Smith received "Outstanding" and "Very Good" grades in all of the evaluative categories, including Management and Professional Responsibilities, resulting in an overall evaluation of "Very Good," the same overall rating received by Susan Kay for the same time period. *Id.; see also* Pl.'s Opp'n, Smith Dep., Ex. 10 (DCPS Annual Evaluation Form of Susan Kay). Notably, Ms. Smith received a "Very Good" rating in the area of Professional Responsibilities, which assessed whether "[t]he appraisee has performed building responsibilities." Pl.'s Opp'n, Birchette Dep., Ex. 11. Thus, if it is accurate that director Birchette's basis for terminating Ms. Smith was her poor attendance [8] and her failure to attend planning meetings, it seems odd that this did not affect the ratings she awarded Ms. Smith on her evaluation form and that she did not indicate a problem with these areas on plaintiff's CLDF form.

The Court concludes that director Birchette's varying, and what a jury could find inconsistent justifications for terminating Ms. Smith, raises a genuine issue of material fact that precludes summary judgment. *See, e.g., Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 285 (3rd Cir.2001) (holding that there were genuine issues of material fact and reversing the district court's grant of sum-mary judgment because, in part, "the ever-changing nature of the proffered reasons" given for plaintiff's termination, could "be viewed as evidence tending to show pretext …"); *Starks v. George Court Co.,* 937 F.2d 311, 315 (7th Cir.1991) (affirming magistrate judge's finding of discrimination in violation of Title VII "[g]iven the magistrate judge's opportunity to view the demeanor of the witnesses at trial and the inconsistencies in [the employer's] version of the events surrounding [the plaintiff's] departure from [the company]."); *Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986) (reversing district court's grant of summary judgment to employer because plaintiff's allegations made in her affidavit that " 'she had never been warned or disciplined about her performance' … directly contradict[ed] [her supervisor's] stated reason that [she] was discharged in part for poor performance[ ] … [and] raise[d] a genuine issue of material fact with respect to the reason for her discharge so as to preclude summary judgment."); *Ferguson v. Small,* 225 F.Supp.2d 31, 40–41 (D.D.C.2002) (holding that "[t]he conflicting explanations given by defendant's agents for [the plaintiff's] termination [were] also sufficient to raise a reasonable inference that defendant's proffered reasons for the termination [were] pretextual. The inconsistent testimony … regarding the motivating reasons for plaintiff's termination cast doubts on the asserted, non-discriminatory, legitimate reasons…. [and] may alone[ ] be sufficient to preclude summary judgment on plaintiff's claim.").

---

service, it is apparent that one could approximate an employee's age based upon the length of time the employee had been employed by DCPS.

8.   Ms. Smith notes that she underwent "reconstructive surgery" for breast cancer at the end of the 1995–96 school year, and was granted leave during this time. Pl.'s Opp'n, Smith Decl. ¶ 33.  Aside from that medical related leave, plaintiff asserts that she was "only out about ten days for illnesses, attending union grievance hearings and attending the funeral of a relative. [Furthermore, she states that] ([n]o one from DCPS ever suggested to [her] that [she] had [a] poor attendance [record]."). *Id.*

Moreover, to the extent that director Birchette's decision was based on her assessment that Ms. Kay was the superior employee, the fact that she rated both employees as "Very Good" for the 1995–96 academic year raises an issue regarding whether her stated reason for terminating plaintiff was pretextual. *See, e.g., Aka,* 156 F.3d at 1295 (noting that a plaintiff challenging an employer's decision not to hire him because another candidate was more qualified can seek to rebut that evidence with proof that the employer's explanation "contradicts other contemporaneous accounts of the employer's decision. . . . Adequate evidence of this type may suffice to permit a jury to infer that the employer's explanation is incorrect or fabricated, and thus to infer discrimination."); *Paquin,* 119 F.3d at 28 (noting that plaintiff could "discredit" his employer's legitimate reason for terminating him, which was based upon the fact that other employees at plaintiff's level had received higher ratings on their evaluations, with evidence that the other employees' evaluations revealed "that other executives received written evaluations less favorable than those [of plaintiff] but nonetheless received higher numerical scores . . . .").

■ Second, an issue exists regarding whether director Birchette fully accounted for Ms. Smith's contributions to the Business and Finance Academy in the same way she did for Ms. Kay. For example, plaintiff argues that director Birchette "limited her review of Ms. Smith's performance to the 1995–96 school year . . . but she credited [Ms.] Kay's 1994 work on a curriculum[,]" in reaching her CLDF score. Pl.'s Opp'n at 27. *Compare* Pl.'s Opp'n, Birchette Dep. at 132 (in response to question about whether she took "other years into consideration" in completing the CLDF forms, Birchette testified that "[i]t was very clear to us that we were only to look at the performance of that specific school year.") *with* Birchette Dep., Ex. 5 (Kay CLDF) (including on Kay's CLDF form that she had initiated the "First Vote" program, which Kay testified she was "sure" she started in 1994, *see* Kay's Dep. at 75). In addition, Birchette appears to have taken the time to observe Ms. Kay in her classroom, as evidenced on the CLDF wherein she described Ms. Kay as having a "high energy classroom[,]" Def.'s Mem., Ex. 5, while not affording the same evaluative opportunity to Ms. Smith. *See* Pl.'s Opp'n, Smith Decl. ¶ 25 (stating that Ms. Birchette only came to visit plaintiff's classroom once during the year when she was employed at the Business and Finance Academy and Ms. Birchette was accompanied by a counselor whom Ms. Smith had asked to provide the records of several students with disciplinary problems). Disparate treatment by a supervisor, if proven, is sufficient evidence to raise an issue of whether there was discriminatory intent.[9] *See McDonnell*

---

9. The Court notes that plaintiff's assertion that director Birchette's statement on Ms. Kay's CLDF regarding that fact that Ms. Kay had an "active, responsive and high energy classroom[,]" see Def.'s Mem., Ex. 5, does not necessarily support the EEOC's belief that "a jury could conclude that Birchette's use of 'high energy' was synonymous with 'young.' Pl.'s Opp'n at 29. For example, the *Paquin* court held that an employer's criticism of the plaintiff for his 'lack of creativity' and his 'stubbornness'[,]" did not support an inference that the employer's decision to terminate the plaintiff was "age-related." 119 F.3d at 31. The *Paquin* court reaffirmed the proposition that "a decision not 'derived from stereotypical preconceptions about older people[]' . . . does not support an inference of age discrimination. Thus, [a plaintiff] must show that [his employer] thought he lacked creativity *because* he was older." *Id.* (emphasis in original). The court concluded that the plaintiff had failed to meet his burden because "[t]he contexts in which the

*Douglas,* 411 U.S. at 801, 93 S.Ct. 1817 ("Discriminatory preference for any group, minority or majority, is precisely ... what Congress has proscribed.") (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). A sufficient showing to that effect has been demonstrated by plaintiff to avoid the entry of summary judgment against her. Furthermore, plaintiff has pointed to evidence that could support a jury finding that the criteria used on the CLDFs were completely subjective and applied by school principals in "various ways[,]" *see* Pl.'s Opp'n at 25; Pl.'s Opp'n, Deposition of Ralph Neal dated December 18, 2002 ("Neal Dep.") at 56. This factual finding could further strengthen plaintiff's discrimination claim. *See Aka,* 156 F.3d at 1298 ("courts traditionally treat expla-

nations that rely heavily on subjective considerations with caution. Particularly in cases where a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination.").

■ Third, although not dispositive on the issue of whether there was discrimination in this case, an issue regarding the legitimacy of the reason provided by DCPS for plaintiff's termination is raised by the subsequent hiring of Rebecca Christian, a woman under the age of 30, who did not have the qualifications the plaintiff had as a social studies teacher, only four months after plaintiff was terminated.[10] *See Paquin,* 119 F.3d at 31 ("hir-

statements were made—detailed evaluations of [the employee's] performance of management tasks one would expect to require creativity and flexibility—indicates they were based not on stereotypes but on objective assessments of job performance." *Id.* In this case, it appears director Birchette's statement was in the context of evaluating Ms. Kay's *classroom environment* and not necessarily Ms. Kay's teaching style or personality. Additionally, one would expect a teacher to provide a "high energy classroom" for her students to stimulate the learning environment, and therefore the statement does not necessarily support a conclusion that the comment was ageist. *Cf. Forman v. Small,* 271 F.3d 285, 293 (D.C.Cir.2001) (noting that employer had made "a series of comments ... that implicitly referred to [the plaintiff's] age ... [such as the fact that plaintiff might] be 'over the hill' or in the 'twilight of his career,' and may have 'written his last significant article.' " Based on these statements, the court concluded that "the employer's correlation of old age with declining productivity represent[ed] the very essence of age discrimination.") (citations omitted); *Aka,* 156 F.3d at 1298 (noting that employer's statement that candidate who was selected for the position at issue was more "enthusiastic" could support an inference of discrimination because of "the fact that outward manifestations of 'enthusiasm' are just the kind of traits that

advancing age and heart-related disability tend to diminish." However, the Court went on to note that "[a]n employer's reliance on disputed subjective assessments will not create a jury issue in every employment discrimination case."); *Sperling v. Hoffmann–La Roche, Inc.,* 924 F.Supp. 1396, 1408–09 (D.N.J.1996) (denying defendant employer's motion to dismiss and noting that, reading plaintiff's complaint liberally as the court was obliged to do, plaintiffs' claims that they were terminated because they were "perceived to be 'less productive or less energetic' ... stated a cause of action under the ADEA ... because consideration of stereotypes such as these in making employment decisions is precisely what the ADEA was intended to eradicate.") (citation omitted).

10. The Court agrees with defendant that Ms. Christian's situation is significantly distinguishable from that of Ms. Smith and therefore the two are not "similarly situated" for purposes of establishing Ms. Smith's prima facie case. *See Holbrook v. Reno,* 196 F.3d 255, 261 (D.C.Cir.1999) ("A plaintiff must also demonstrate that 'all of the relevant aspects of her employment situation' were 'nearly identical' to those of the [other]' employee.") (citation omitted). However, this evidence does cast a shadow upon defendant's proffered reason for terminating Ms.

**54**

ing a less qualified person can support an inference of discriminatory motive ....") (citing *Harding v. Gray*, 9 F.3d 150, 153–54 (D.C.Cir.1993)). If it is true that the Business and Finance Academy had to reduce the number of social studies teachers to one, it is questionable how only four months later it was able to accommodate a second social studies teacher, who happened to be younger than the plaintiff. *See, e.g., Aka*, 156 F.3d at 1293 ("If the jury can infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination."); *but see Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 941 & n. 4 (6th Cir. 1987) (holding that where ADEA plaintiff "was not replaced until [three] months after [his] discharge, and the discharge occurred in the context of a reduction in force due to economic necessity[,] ... substantially weaken[ed][his] ... claim."). However, in light of the other facts presented by plaintiff, which the Court concludes support an inference of discrimination, this is also a question for a jury, not the Court, to resolve.

Finally, an issue is raised regarding the lack of any explanation from DCPS about who decided to eliminate one of the two social studies teacher positions. Although this issue standing alone might not be material, *see, e.g., Clifton*, 36 F.Supp.2d at 24 (holding that ambiguity regarding why

plaintiff was reassigned to new position, from which she was eventually terminated, did not, standing alone, preclude summary judgment on plaintiff's Title VII claim), in conjunction with the fact that director Birchette has offered conflicting reasons for plaintiff's termination and the fact that plaintiff and Ms. Kay had received identical overall performance ratings for the school year immediately prior to the year when the RIF decisions were made, is evidence that could further support an inference that Ms. Smith's termination was the result of age animus, if indeed it can be proven that director Birchette was responsible for designating one of the social studies teacher positions for elimination. *See, e.g., Ferguson*, 225 F.Supp.2d at 41 (holding that "the numerous inconsistencies in the testimony of the persons primarily responsible for plaintiff's termination, when coupled with the timing of plaintiff's termination, and the conflicting reasons given by defendant's agents for the termination, might well persuade a jury that defendant fired [the plaintiff in retaliation for] ... the letter sent by her attorney to defendant's General Counsel.").

■ In sum, the Court concludes that although, taken as a whole, "plaintiff's evidence is not conclusive, it clearly presents genuine issues of material fact, which are properly committed to a jury's consideration." *Id.* at 42 (citing *Aka*, 156 F.3d at 1289).[11] Accordingly, for the reasons stat-

Smith, namely, that as a result of budgetary constraints, the Business Academy had to eliminate one of the social studies teaching positions. In other words, Ms. Christian's placement on the Business and Finance Academy staff as a second social science teacher only four months after Ms. Smith's termination raises suspicion about the economic explanation proffered by DCPS as the reason Ms. Smith was terminated.

11. Plaintiff argues that "all [of] the teachers [director Birchette] reviewed who were over

the age of 50 [were terminated]" and that this is evidence of age discrimination. Pl.'s Opp'n at 30; Pl.'s Opp'n, Declaration of Robert Goldman ("Goldman Decl."), Ex. 4 (Chart of Barbara Birchette's rankings for Business Academy teachers subject to the 1995–96 RIF); Pl.'s Opp'n, Birchette Ex. 16 (Memorandum from Barbara Birchette to Joyce Dews regarding "RIF Ranking" dated June 13, 1996). Defendant counters "that the evaluation of three teachers [who were over the age of 50] is statistically too small to have any meaning, particularly in light of the actual

ed above, defendant's motion for summary judgment is denied and this matter shall be tried by a jury.

SO ORDERED on this 13th day of August, 2003.[12]

### ORDER

In accordance with the Court's ruling set forth in the Memorandum Opinion that accompanies this Order, it is on this 13th day of August, 2003, hereby

**ORDERED** that defendant's Motion for Summary Judgment [# 33] is denied.

situation at the business academy." Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply") at 4. Defendant notes that regarding the business education teachers, a 41 year old and a 50 year old were rated higher than a 35 year old, a 62 year old, and a 53 year old. *Id.* at 4. The Court agrees with defendant that this evidence is not highly probative and does not establish that there was discriminatory animus towards older employees in general. *See Simpson,* 823 F.2d at 942, 943 (holding that plaintiff's "statistics regarding the average age ... of employees retained and fired during the period immediately preceding and following his termination[,] ... even if arguably supporting an inference of discrimination to establish a prima facie case ... [had] insufficient probative value to support a jury verdict on the ultimate question of discrimination." This was due, in part, because the plaintiff "used the departure of only seventeen people as a basis for his statistical argument[,] which

the court concluded was "suspect." Furthermore, the plaintiff "failed to provide the relative qualifications of those hired" and the positions to which they were assigned [and] he neglect[ed] vital information regarding the pool of applicants and whether, for example, qualified older employees were available or applied for those jobs."); *Goss,* 942 F.Supp. at 665 (rejecting plaintiff's "statistical evidence that [plaintiff argued] support[ed] a finding of intentional discrimination, in that the four employees who [had] been hired for management positions in patient accounts since [the time of plaintiff's termination] [had] been under the age of forty." The court held that "[t]his statistic lack[ed] probative value[,]" in part because plaintiff failed to provide "comparative data" regarding the positions and relative qualifications of these other employees).

12. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.